## ADAMS v. HACKETT.

In an action at the suit of the surviving partner of a firm, he may include a count for a debt due to himself, in his own right.

A plaintiff, who is the survivor of two distinct firms, may include in his declaration a count for a debt due from a third person to each of the firms, and also a count for a debt due to him in his own right.

Statutes which take away or impair vested rights, acquired under existing laws, are retrospective and unconstitutional.

Where A. procured a license under the general statute of the State, for the sale of spirituous liquors to sell for one year, and before the expiration of the year the law by which the license was granted was repealed—*Held*, that the license was good for the term for which it was granted, and that sales made under it would be legal.

Where a license was granted " to sell wine and spirituous liquors, for medicinal, mechanical and chemical purposes, and for no other use or purpose," according to the provisions of the act of July 6, 1849—*Held*, that a sale for purposes other than those specified in the license would be illegal, and that the consideration for such a sale could not be recovered.

ASSUMPSIT, on a promissory note, dated on the tenth day of August, 1849, and payable to J. G. Bancroft & Co., of whom the plaintiff is the surviving partner, for the sum of $25. Under the third count in the declaration, the plaintiff filed a specification, being a bill of items amounting to the sum of $114,62, all of which was for liquors, except the sum of $6,90. The balance due, according to the specification, was $27,18.

The action was committed to an auditor, who made a report, of which the following is the substance.

The auditor found due upon the note, including interest, the sum of $30,99; and upon the account, the sum of $31,22, including interest; and at the request of the parties, he stated the following facts for the opinion of the court upon the law.

The plaintiff declared upon the note as the surviving partner of J. G. Bancroft & Co.; and in the specification the first two charges, amounting to $6,90, were for articles sold the defendant by the firm of G. A. & J. Q. Adams, of

whom the plaintiff is the surviving partner; and also his own individual account, amounting to the sum of $107,72. And the defendant objected, that these causes of action could not be joined, and that the plaintiff could not recover on both counts.

The defendant also objected that a part of the plaintiff's claim was for liquors sold without license, and contrary to law. In relation to this point the following facts were proved. On the 31st day of March, 1849, J. G. Bancroft & Co. were duly licensed to sell spirituous liquors, for any purpose, for the term of one year, and the license was duly recorded. After they were licensed, and before the 10th day of August, 1849, they had sold the defendant goods, mostly liquors, and on settlement the note declared on was given. A small part, only, of the liquors, was sold after the 6th of July, 1849, when the act, under which the license was granted, was repealed. The defendant contended that the repeal of the act vacated the license, though only about one third part of the term for which it was granted had expired. If the court should be of the opinion that the repeal of the act did not avoid the license, then the auditor found due the amount of the note and interest.

The liquors mentioned in the specification were sold under a license granted by the selectmen of Nashville, by virtue of the act of July 6, 1849, to George A. and J. Q. Adams, " to sell wine and spirituous liquors, for medicinal, mechanical and chemical purposes, and for no other use and purpose." It appeared that all the liquors charged, were sold for a purpose different from either of those mentioned in the license ; that they were sold to be used by the defendant as a beverage, and to be sold again to such persons as wished to purchase them of him for any purpose.

Upon this point, the defendant testified that at one time when he was purchasing liquor of the plaintiff, the latter asked him what he did with so much liquor, and he told him that he kept a sort of a bar in his house, and sold the

liquor by the glass to the brick makers, and to any body who wished to buy it; and that he retailed most of it in that way. He also testified that he did not buy it for either of the purposes mentioned in the license; but he did not say that he so informed the plaintiff. This fact and testimony was not controverted before the auditor.

If the license did not authorize the surviving partner to sell liquors after the dissolution of the firm, then the auditor found nothing due on the account. If the license continued valid for the surviving partner, and if the sale for any other purposes than those mentioned in the license was unlawful, then he found nothing due on the account, for the credits given by the plaintiff to the defendant much exceeded the amount of the plaintiff's charges for goods other than liquors.

The auditor also found that after the death of J. Q. Adams, on the first of April, 1850, the plaintiff continued the business without taking any inventory of the stock, or beginning another set of books.

The questions arising upon the case were transferred to this court for determination.

*Emerson*, for the plaintiff.

*Morrison & Fitch*, for the defendant.

Eastman, J. As we understand the declaration in this case, it is founded upon promises made to the plaintiff as surviving partner of the firm of J. G. Bancroft & Co., and as surviving partner of the firm of G. A. & J. Q. Adams, and also upon promises to the plaintiff, in his individual capacity. And the objection is taken by the defendant that these are different causes of action, which cannot be joined in one suit.

We suppose the objection is, not that the causes of action are of a different nature, and therefore cannot be joined, but

that they accrue in different rights; that is, that here is a cause of action in favor of the firm of J. G. Bancroft & Co., and another in favor of G. A. & J. Q. Adams, and still another in favor of George A. Adams, individually, and that the three cannot be united in one suit.

It is not disputed that the plaintiff is the surviving partner of the two firms, and it is well settled, that where a firm consists of two persons, and one of them dies, the rights of action which were vested in the firm survive to the remaining member. Not to him as to an administrator or executor, representing another person, but as the survivor of the partnership, representing himself, and being all that is left of the firm. The cause of action is in him; and hence it has been often held, that in an action at the suit of a surviving partner, he may include a count for a debt due to himself in his own right; as both causes of action are in him. *Slipper & a.* v. *Stidstone*, 5 D. & E. 493; *French* v. *Andrade*, 6 D. & E. 582; *Golding* v. *Vaughan*, 2 Chitty 436; *Richards* v. *Howther*, 1 Barn. & Ald. 29; *Smith* v. *Barrow*, 2 D. & E. 476.

On the death of one of two or more joint obligees, promisees, &c., the action must be brought by the survivor, or, if there be more than one, by all the survivors. 2 Salk. 444; Carth. 170; 1 Bos. & P. 445; 1 Saund. 291, f. n. 4. The remedy, at law, survives entire to the surviving obligee or promisee, who receives the share of the deceased in the avails of the suit, as trustee to his personal representatives, and must account for it with them. 1 Ld. Ray. 340; 1 Ves. 242, 252; Toller on Ex'rs. 155, 163, 444.

As it is clear, upon authority, that a surviving partner may, in an action brought by him as such survivor, include in his declaration a count for a debt due to himself in his own right, no reason occurs to us why he may not also, in the same suit, join another count for a debt accruing to him as survivor of another firm. The causes of action are all in him, and the principle in the one case must be the same

as in the other. This objection of the defendant must therefore fail.

The plaintiff seeks to recover, first, the note given by the defendant to Bancroft & Co.; second, an account of the firm of G. A. & J. Q. Adams against the defendant; and third, a claim due the plaintiff in his individual right.

In regard to the note, the defence is, that it was given in part for liquors sold in violation of law. As applicable to this point the case finds, that on the 31st day of March, 1849, J. G. Bancroft & Co. were duly licensed to sell spirituous liquors for any purpose for the term of one year, and the license was duly recorded. After they were licensed and before the 10th day of August, 1849, the day on which the note was made, they had sold the defendant goods, mostly liquors, and on settlement the note was given. A small part only of the liquor was sold after the 6th of July, 1849, when the act under which the license was granted was repealed.

Now although it may be probable, from this statement, that a small amount was included in the note for liquors sold after July 6, 1849, yet that fact is not distinctly found. The note was given on a settlement, and there may have been credits, which were applied by the parties at the time, for the payment of the liquors sold after July 6, 1849. A promissory note is *prima facie* evidence of a good consideration, and imports a consideration until the contrary is shown. *Horn* v. *Fuller*, 6 N. H. Rep. 511; 2 Stark. Ev. 280; 9 Johns. 217. The illegality of the consideration should be made clearly to appear, before the note is held to be void.

But assuming that a part of the consideration of the note was for liquors sold after the passage of the act of July, 1849, still we are of opinion that it may be recovered. Bancroft & Co. had a general license, authorizing them to sell until April 1, 1850. It was a license granted by virtue of law. It had cost them a consideration to make it perfect; the fees for recording; and although the amount is

very trifling, still it was a consideration. They had ac-quired rights under their license which had become fixed; the right to sell according to the terms of the license, until April following, and so far as these rights were concerned, the law of July 6, 1849, would be retrospective, and of course inoperative. Statutes which take away or impair vested rights, acquired under existing laws, are retrospective and unconstitutional. *Dow* v. *Norris*, 4 N. H. Rep. 16; *Society* v. *Wheeler*, 2 Gall. 139; *Gilman* v. *Cutts*, 3 Foster's Rep. 382, and cases cited.

But the other matters sued for cannot be recovered. The whole amount, except the $6,90, was for liquors attempted to be sold under a license granted by virtue of the act of July 6, 1849. The case finds that these liquors were sold under a license granted by the selectmen of Nashville, by virtue of the act of July 6, 1849, to George A. & J. Q. Ad-ams, " to sell wine and spirituous liquors, for medicinal, me-chanical and chemical purposes, and for no other use or pur-pose ;" that they were all sold for a purpose different from either of those mentioned in the license; that they were sold to be used by the defendant as a beverage, and to be sold again to such persons as wished to purchase them of him for any purpose.

Now it is perfectly apparent that these sales were not for either of the purposes specified in the license. The liquors were not sold to be used for medicinal, mechanical or chem-ical purposes, but to be used by the defendant as a beverage. The sale was therefore in violation of the general statute, and being illegal, it raises no consideration which can be inforced.

The court had occasion to put a construction upon this statute in the case of *The State* v. *Perkins*, 6 Foster's Rep. 9, and it was there held, that if a person having a license to sell for the purposes specified in the act of July, 1849, should sell for other purposes, he was indictable for the offence in the same manner as before the passage of the

act; that a license under the statute of July, 1849, was a limited one, and conferred no general powers to sell for all purposes.

These sales, then, were made contrary to law, and the account cannot be recovered.

As to the $6,90, the payments made by the defendant far exceeded that sum, and that account is thus cancelled.

This disposes of the whole matter; and the result consequently is, that the plaintiff must have judgment for the amount of the note and interest.

*Judgment for the plaintiff.*